IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BYRON R. BARTLETT et al.         *

                Plaintiffs         *

            vs.                  *    CIVIL ACTION NO. MJG-13-975

BANK OF AMERICA, NA              *

                Defendant         *

*       *       *       *       *       *       *       *       *

<u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS</u>

The Court has before it Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiffs' Complaint [Document 26] and the materials submitted relating thereto.  The Court finds a hearing unnecessary.


I.    <u>BACKGROUND</u>[1]

At all times relevant hereto, Plaintiffs Byron R. Bartlett ("Byron") and Connie J. Beals-Bartlett ("Connie), (collectively, "the Bartletts"), owned a single unit residential property in Belcamp, Maryland ("the Property").  The Property was subject to a mortgage for a loan from Defendant Bank of America, N.A. ("BOA") issued to Connie.  By September 2010, Connie was behind in her loan payment obligations.

---

[1]    The "facts" herein are as alleged by Plaintiff and are not necessarily agreed upon by Defendant.

On September 8, 2010, BOA sent the Bartletts a letter
"stating that [Connie] may be eligible for a modified closed end
loan secured by the Property."  Compl. ¶ 9.  On September 13,
2010, the Bartletts sent BOA some 47 pages of documents in
response.

On September 16, 2010, BOA sent Connie a notice of
acceleration of her loan.

"On September 27, 2010, [BOA] sent another letter stating
that [Connie] may be eligible for a modified closed end loan"
secured by the Property.  Id. ¶ 12.  In response, "[o]n October
25, 2010, the [Bartletts] sent additional documents to [BOA]."
Id. ¶ 13.

On January 11, 2011, BOA sent a letter "stating that
[Connie] was not eligible for a modified closed end loan."  Id.
¶ 16.

On April 28, 2011, BOA sent "a [third] letter stating that
[Connie] may be eligible for a modified closed end loan" secured
by the Property.[2]  Id. ¶ 18.

"On November 4, 2011, [BOA] sent [the Bartletts] a letter
stating that they may be eligible for a modified closed end
loan."  Id. ¶ 22.

---

[2]     On the same date, BOA sent the Bartletts a Notice of Intent
to Foreclose.

"On April 16, 2012, [BOA] sent a letter stating that it was denying [the Bartletts'] application for a modified closed end loan." Id. ¶ 24.

As discussed herein, the Bartletts claim that BOA violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. by failing to provide timely and adequate notice of use of credit scores as required by 15 U.S.C. § 1681g(g). They have filed the instant suit on behalf of themselves and a class consisting of "[a]ll persons who sought a closed end loan to be secured by residential real property of no more than 4 units within two years preceding the filing of this action and for whom Bank of America used or considered a credit score." Id. ¶ 36.

By the instant motion, BOA seeks dismissal of all claims in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

II.  DISMISSAL STANDARD

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)[3] tests the legal sufficiency of a complaint. A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

---

[3]   All "Rule" references herein are to the Federal Rules of Civil Procedure.

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted).  When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff.  However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]." Id.  A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

In considering a Rule 12(b)(6) motion, the Court does not always have to limit its review to the pleadings.  It may take judicial notice of public records, including statutes, and "may also 'consider documents incorporated into the complaint by reference,' 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014) (citations omitted).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id.

(quoting Twombly, 550 U.S. at 557).  Thus, if "the well-pleaded

facts [contained within a complaint] do not permit the court to

infer more than the mere possibility of misconduct, the

complaint has alleged - but it has not 'show[n]' - 'that the

pleader is entitled to relief.'"  Id. (quoting Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).


III. DISCUSSION

     The Bartletts present a claim based upon the contention

that BOA failed to comply with certain credit score disclosures

required when a consumer applies for a closed end loan, in

violation of 15 U.S.C. § 1681g(g) of the Fair Credit Reporting

Act ("FCRA").  However, as discussed herein, § 1681g(g) does not

apply in this case because neither of the Bartletts applied for

a closed end loan.[4]


     A.    The Statute

     "Congress enacted FCRA in 1970 to ensure fair and accurate

credit reporting, promote efficiency in the banking system, and

protect consumer privacy."  Safeco Ins. Co. of Am. v. Burr, 551

U.S. 47, 52 (2007).  In FCRA, "Congress recognized both the

'vital role' of CRAs [consumer reporting agencies] and the 'need

---

[4]     Nor did the Bartletts apply for an open end loan for a
consumer purpose, which is also subject to the disclosure
requirements of 15 U.S.C. § 1681g(g).

to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.'" Ross v. F.D.I.C., 625 F.3d 808, 812 (4th Cir. 2010).

The Bartletts have brought the instant lawsuit under 18 U.S.C. § 1681g(g), which was added to FCRA as part of the Fair and Accurate Credit Transactions Act of 2003.  Section 1681g(g) states in relevant part:

> Any person who makes or arranges loans and who uses a consumer credit score, . . . in connection with an application initiated or sought by a consumer for a closed end loan or the establishment of an open end loan[5] for a consumer purpose that is secured by 1 to 4 units of residential real property . . . shall provide the [requisite statutory notice] to the consumer as soon as reasonably practicable

15 U.S.C. § 1681g(g)(1) (emphasis added).

The notice required by § 1681g(g) includes:

> • the current credit score of the consumer or the most recent credit score of the consumer that was previously calculated by the credit reporting agency for a purpose related to the extension of credit;

---

[5]   "[A] closed-end loan, is extended for a specified length of time, requires repayment of interest and principal in monthly installments, and ordinarily has an interest rate fixed for the life of the loan." Kichler v. Wells Fargo Bank, N.A., No. 12-1206 JRT/AJB, 2013 WL 4050204, at *2 n.2 (D. Minn. Aug. 9, 2013).  A traditional home equity loan is an example of a closed end loan.  Id.  An "open-end loan, is a revolving account that permits borrowing from time to time up to the amount of the credit line and has a more flexible repayment schedule." Id.  A line of credit is an example of an open end loan.  Id.

- the range of possible credit scores under the model used;

- all of the key factors that adversely affected the credit score of the consumer in the model used, the total number of which shall not exceed 4 . . . ;

- the date on which the credit score was created;

- the name of the person or entity that provided the credit score or credit file upon which the credit score was created; and

- A . . . notice [form], which shall include the name, address, and telephone number of each consumer reporting agency providing a credit score that was used.

15 U.S.C. §§ 1681g(f)(1), (g)(1)(A)(i)-(ii).  FCRA contains a private right of action for willful and/or negligent failures to comply with the disclosure requirements of § 1681g(g).  See id. §§ 1681n, 1681o.


    B.   The Application at Issue

    1.   Connie

    There is no doubt, indeed, the Bartletts seem to concede, that Connie did not submit an application for a closed end loan. See Compl. ¶¶ 23-24.

    For example, the letter of September 8, 2010 to Connie states:

> **You may be eligible for the Home Affordable Modification Program** ["HAMP"],[6] an initiative sponsored by the federal government to help homeowners who are finding it difficult to make their mortgage payment. Under this program, we will review your current financial situation to determine if we can help you modify your mortgage to give you a new, more affordable mortgage payment.

[Document 26-5] at 2.

The response the Bartletts sent to BOA on September 13, 2010 includes an "Acknowledgement and Agreement,"[7] stating:

> I [Connie] need to request a modification of the terms of my mortgage loan, short sale or deed-in-lieu of foreclosure.
>
> I [Connie] understand that the servicer will use the information in this document to evaluate my eligibility for a loan modification or short sale or deed-in-lieu of foreclosure,
>
> I [Connie} understand that the Servicer will collect and record personal information, including, . . . credit score . . . .

[Document 26-6] at 6 (emphasis added).

The April 16, 2012 denial letter states that BOA "ha[d] reviewed [Connie's] home loan for eligibility in all

---

[6]    See Legore v. OneWest Bank, FSB, 898 F. Supp. 2d 912, 914 (D. Md. 2012) ("Faced with a rising number of home foreclosures across the United States, the U.S. Department of the Treasury introduced [HAMP] in February 2009. HAMP aims to stem the tide of foreclosures by providing funding incentives to loan servicers who agree to reduce borrowers' monthly payments in compliance with the program guidelines." (emphasis added)).

[7]    This was signed by Connie as the Borrower and Byron as the "Co-Borrower," presumably because Byron signed the Deed of Trust for the Property securing the loan. See [Document 26-4] at 2.

modification programs that may have been available," and had determined that "[Connie's] <u>loan is not eligible for a loan modification</u>."  [Document 26-13] at 2 (emphasis added).

There is no doubt that Connie applied for a modification of her pre-existing loan and not for a new, closed end loan. Moreover, in their Response, the Bartletts have acknowledged that Connie submitted "an application for a loan modification" and stated that "Byron [was] a co-applicant on the <u>modification application</u>."  [Document 27] at 4, 20 (emphasis added).


2.   <u>Byron</u>

The Bartletts present a theory that, by signing the HAMP loan modification papers as a "Co-Borrower," Byron was an applicant for a closed end loan.  They state that Byron was "a non-borrower on the original loan but a co-applicant on the modification application[, which] would [have] provide[d] him with a closed end loan."  <u>Id.</u> at 4.  However, there is no factual allegation that supports a plausible contention that Byron was applying for a new loan to be issued to him or was even agreeing to accept personal liability on the existing loan issued to Connie.  Moreover, there is no factual allegation that BOA took any action in regard to a loan to Byron, rather than actions related to a possible modification of the pre-existing loan to Connie.

C.   <u>The Equal Credit Opportunity Act Contention</u>

The Bartletts contend that because an application to modify a loan qualifies as an application for "credit" under the Equal Credit Opportunity Act ("ECOA"), <u>see</u> <u>Walton v. Wells Fargo Bank, N.A.</u>, No. AW-13-428, 2013 WL 3177888, at *6 (D. Md. June 21, 2013), then "§ 1681g(g) by its terms involves credit applications that are in the form of loan modification applications relating to residential mortgage loans." [Document 27] at 16.

It is true that the FCRA incorporates ECOA's definitions of "adverse action,"[8] "credit,"[9] and "creditor."[10]   However, the scope and purpose of ECOA and FCRA differ.   <u>Cf.</u> <u>Padin v. Oyster Point Dodge</u>, 397 F. Supp. 2d 712, 720 (E.D. Va. 2005) ("Although ECOA and FCRA have related notice requirements, they serve different purposes with different proscriptions.").

Congress enacted ECOA "to prevent discrimination against those applying for credit" - in all of its forms, both commercial and personal consumer credit.   <u>Capitol Indem. Corp. v. Aulakh</u>, 313 F.3d 200, 202 (4th Cir. 2002).   The purpose of FCRA is "to ensure fair and accurate credit reporting, promote

---

[8]   <u>Compare</u> 15 U.S.C. § 1681a(k)(1)(A), <u>with</u> 15 U.S.C. § 1691(d)(6).
[9]   <u>Compare</u> 15 U.S.C. § 1681a(r)(5), <u>with</u> 15 U.S.C. § 1691a(d).
[10]   <u>Compare</u> 15 U.S.C. § 1681a(r)(5), <u>with</u> 15 U.S.C. § 1691a(e).

efficiency in the banking system, and protect consumer privacy."
Safeco Ins. Co. of Am., 551 U.S. at 52.

Under the Bartletts' theory – unsupported by any citation
to authority – any application for credit would fall within §
1681g(g).  However, there are express limitations on the scope
of the provision.  First, the loan must be for a consumer
purpose.  Second, the loan must be secured by 1 to 4 units of
residential real property.  Third, and, most importantly for the
instant case, the application must be for a closed end loan or
an open end loan.  An application to modify a pre-existing
closed end loan is not an application for a loan covered by §
1681g(g).[11]

---

[11]     As BOA points out, 15 U.S.C. § 1681m, which addresses the
"[d]uties of users taking adverse actions on basis of
information contained in consumer reports," does appear to cover
the denial of an application to modify a pre-existing loan
because an adverse action includes "a denial or revocation of
credit, a change in the terms of an existing credit arrangement,
or a refusal to grant credit in substantially the amount or on
substantially the terms requested."  See 15 U.S.C. §§ 1681m,
1691(d)(6).  However, violations of § 1681m do not give rise to
a private cause of action under § 1681n and § 1681o.  See
Putkowski v. Irwin Home Equity Corp., 423 F. Supp. 2d 1053,
1061-62 (N.D. Cal. 2006) ("While § 1681n and § 1681o of the FCRA
generally establish a private right of action for certain
violations of the FCRA, § 1681m(h)(8) (added by FACTA) now
expressly provides that there is no private right of action for
violations of § 1681m."); see also Farrow v. Capital One Auto
Fin., Inc., No. CCB-06-2324, 2007 WL 4707634, at *2 n.2 (D. Md.
Nov. 9, 2007) (citing Putkowski favorably and noting that
§ 1681m(d)(1)(A)-(E) "does not establish a private right of
action for failure to include a 'clear and conspicuous'
disclosure statement.").

The parties have not cited, and the Court has not found, any decision to support the Bartletts' theory.  Moreover, the Court finds the Bartletts' theory contrary to the plain language of the FCRA.


D.   <u>Willfulness and Negligence</u>

The Court's decision that the Complaint fails to present a plausible claim that BOA violated § 1681g(g) renders moot the Bartletts' contention that there was a willful and/or negligent violation of the FCRA.


IV.  <u>CONCLUSION</u>

For the foregoing reasons:

    1.   Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's Complaint [Document 26] is GRANTED.

    2.   Judgment shall be issued by separate Order


SO ORDERED, on <u>Tuesday, July 29, 2014</u>.

_____<u>/s/</u>_____
Marvin J. Garbis
United States District Judge
